UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| D.R. b/n/f NICCOLE LEWIS; and NICOLE LEWIS, *individually* | § § § | |
| Plaintiffs. | § § | |
| VS. | § | CIVIL ACTION NO. 3:18–CV–00194 |
| DEVEREUX ADVANCED BEHAVIORAL HEALTH | § § § § | |
| Defendant. | § § | |

# MEMORANDUM AND RECOMMENDATION

Plaintiff Niccole Lewis ("Lewis"), individually and on behalf of her son, D.R., filed this lawsuit against Defendant Devereux Advanced Behavioral Health ("Devereux"). Devereux has filed a Motion to Dismiss for Plaintiff's Failure to State a Claim ("Devereux's Motion to Dismiss") (Dkt. 23), seeking dismissal of Lewis's cause of action based on Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794. Devereux's Motion to Dismiss was referred to this Court by United States District Court Judge George C. Hanks, Jr. for report and recommendation. Dkt. 26.

After careful consideration of the relevant pleadings, oral argument, and applicable law, the Court RECOMMENDS that Devereux's Motion to Dismiss be DENIED in part and GRANTED in part.

## FACTUAL BACKGROUND

This section is based on the material facts alleged in the First Amended Complaint ("Amended Complaint").[1] D.R. is a minor who has been diagnosed with pervasive developmental delays, autism spectrum disorder, bipolar disorder, depression, anxiety, and attention deficit hyperactivity disorder. Devereux is a nonprofit organization with a number of locations across the United States. Devereux's League City, Texas location serves adolescents and young adults between the ages of 13 and 22 years old with emotional, behavioral, developmental, psychiatric, and chemical dependency disorders. Devereux advertises itself as a place that "changes lives by unlocking and nurturing human potential for people living with emotional, behavioral or cognitive differences." Dkt. 22 at 4. To help D.R. prepare to attend school and cope with his disabilities, Lewis enrolled D.R. at Devereux's League City location. D.R. arrived at Devereux on March 22, 2017. Within weeks, Lewis received reports that D.R. was becoming more independent and learning to socialize with his peers.

The positive feedback, however, failed to reveal that soon after D.R.'s arrival at Deveraux, he encountered gross mistreatment. The Amended Complaint provides a chronology of events, detailing a series of alarming incidents. The first signs of trouble began when D.R. injured his knee playing basketball on May 20, 2017. After hearing about the injury, Lewis called Devereux and told a nurse that D.R. needed to go to the emergency

---

[1] In considering Devereux's Motion to Dismiss, the Court is required to accept all well-pled factual allegations as true and evaluate all plausible inferences derived from those facts in favor of Lewis. *See Magee v. Reed*, 912 F.3d 820, 823 (5th Cir. 2019).

room.  The nurse told Lewis that Devereux employees were monitoring D.R. and waiting for a Devereux doctor to make that determination.  The next day, D.R. was taken to Clear Lake Emergency Medical Corps where he was diagnosed with deep bruising and ordered to bed rest.  Lewis alleges that nobody at Devereux let her know that D.R. had been taken to the emergency room.

When Lewis called Devereux on May 29, 2017, a nurse claimed that D.R. was "acting like he wanted someone to 'beat him up' so he could go home." *Id.* at 6.  Alarmed by this comment, Lewis emailed a Devereux case coordinator and supervisor.  Lewis further alleges that on May 29, 2017, two Direct Support Personnel ("DSP") at Devereux physically restrained D.R.  D.R. told the DSPs they were "breaking his leg" and that he "heard something pop" in his knee. *Id*. at 7.  Devereux took D.R. to the hospital for medical care, where an orthopedic surgeon determined that D.R. suffered a torn ACL that required knee surgery.  On June 22, 2017, D.R. had knee surgery.  Following the surgery, doctors instructed D.R. to use a wheelchair for eight weeks.

The Amended Complaint next details an incident that occurred on July 24, 2017 after D.R. asked a DSP, Feliz Johnson ("Johnson"), whether a package had arrived for him.  D.R. expressed his displeasure when the Johnson would not tell him if the package had arrived.  Johnson allegedly told D.R. to be quiet, and that he was "sick and tired of his sh[*]t" and that "[D.R.] thought that he was so special." *Id.* at 8.  The Amended Complaint alleges that Johnson called D.R. derogatory names and "grabbed him by his shirt, pulled him out of his wheelchair, threw him on the bed face-down, climbed on top of D.R. with one leg on each side of his body, and put his arm around D.R.'s neck in a choke-hold." *Id.*

3

D.R.'s roommate witnessed the incident and went to get another DSP. The other DSP physically removed Johnson from D.R. Lewis claims that Devereux never contacted her about this incident. Instead, Lewis learned about the incident a few days later when D.R. recounted the events to her. Lewis contacted Devereux and she was assured that Johnson would be transferred pending an investigation.

Lewis next alleges that D.R. suffered a third restraint injury on August 8, 2017. Due to his anxiety, D.R. defecated on himself. D.R. requested a change of clothes from a nurse. The nurse refused to give D.R. a change of clothes and D.R. became verbally aggressive. A supervisor and two DSPs were called to physically restrain D.R. During this incident, D.R.'s knee was re-injured, and he was taken to the emergency room. He was placed on bed rest and told not be bear weight on his knee for two weeks.

In August 2017, Hurricane Harvey hit the Houston area and all Devereux clients were evacuated to another location. Lewis went to visit D.R. at the new location and realized that the area was not secure enough for D.R., who was prone to wander. Devereux asked Lewis to take D.R. home because it could not adequately meet D.R.'s needs at the temporary location. Lewis returned home with D.R. for a month. During this time, Lewis alleges D.R. did not receive any services from Devereux although "some of which could have been administered via telephone or video conference." *Id.* at 10.

Following D.R.'s return to Devereux in October 2017, Lewis alleges Devereux continued to mistreat D.R. In a December 2017 family therapy session, which included D.R., Lewis, and a Devereux therapist, D.R. reported that multiple Devereux employees were verbally abusive. On January 29, 2018, D.R. stated that he was afraid of a certain

4

DSP, Jahmile Thomas ("Thomas"). D.R. alleges that Thomas called him a "blue nigger" and D.R. felt threatened by Thomas. Lewis reported this incident to D.R.'s treatment team and "[i]n response to Lewis'[s] report, Dr. Tulan Nguyen told Lewis, 'If you don't like the program, you can take him out.'" *Id.* at 12.

Lewis alleges that on January 31, 2018, Thomas assaulted and abused D.R. D.R. suffered an abrasion to the head, a contusion on his face, and a large cut across his shoulders. On February 1, 2018, a Devereux supervisor called Lewis to advise her that Devereux had reported the incident to the Texas Department of Family Protective Services ("TDFPS"). TDFPS sent an investigator, Lynette Damra ("Damra"), to the facility. Following Damra's interview with D.R. and a Devereux nurse, Damra recommended that Thomas never be allowed to work around children again. Despite this recommendation, Lewis alleges that Thomas returned to work at Devereux at some point in 2018. D.R. saw Thomas at Devereux on or about April 9, 2018, and had a panic attack. That day, a Devereux staff member contacted Lewis and reported that D.R. was acting "weirder" than normal. Fearing for her son's safety, Lewis flew to Devereux on April 14, 2018, to retrieve her son.

Lewis alleges nine causes of action against Devereux: (1) violations of Section 504; (2) violations of the Texas Mental Health Code; (3) negligence; (4) intentional infliction of severe mental and emotional distress; (5) assault and battery; (6) respondeat superior; (7) proximate cause; (8) ratification; and (9) Lewis's individual claims for economic damages.

Devereux has only moved for dismissal of the Section 504 claim, arguing that "[Lewis] has insufficiently plead her claim against [Devereux] under Section 504 of the Rehabilitation Act of 1973 and as such fails to state a claim upon which relief can be granted." Dkt. 23 at 2.

## MOTION TO DISMISS STANDARD

The sufficiency of a complaint is generally tested under Rule 12(b)(6), which authorizes a defendant to file a motion to dismiss a complaint for failure to state a claim upon which relief can be granted. The purpose of Rule 12(b)(6) motion is to allow the court to eliminate lawsuits that are fatally flawed in their legal premises and destined to fail, sparing litigants the burdens of unnecessary pretrial and trial activity.

In deciding a Rule 12(b)(6) motion, the court construes plaintiff's factual allegations in the light most favorable to plaintiff, accepts all well-pleaded factual allegations, and draws all reasonable inferences in plaintiff's favor. *See, e.g., Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004). A court should grant a motion to dismiss when the complaint fails to contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In that regard, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Similarly, a plaintiff must put forth more than "unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Id*. Determining whether the plausibility standard has been met is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

As a general rule, a motion to dismiss is "viewed with disfavor and is rarely granted." *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009).

**ANALYSIS**

"Section 504 of the Rehabilitation Act provides that '[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance[.]" *Doe v. Columbia-Brazoria Indep. Sch. Dist.*, 855 F.3d 681, 690 (5th Cir. 2017) (citing 29 U.S.C. § 794(a)). This provision was enacted "to ensure that handicapped individuals are not denied jobs or other benefits because of the prejudiced attitudes or the ignorance of others." *School Bd. of Nassau Cty. v. Arline,* 480 U.S. 273, 284 (1987). To establish a prima facie case of discrimination under Section 504, a plaintiff must plead "(1) the existence of a program or activity within the state which receives federal financial assistance; (2) the plaintiff is an intended beneficiary of the federal assistance; and (3) the plaintiff is a qualified handicapped person, who solely by the reason of her handicap has been excluded from participation in, been denied benefits from, or otherwise has been subject to discrimination under such program or activity." *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 676 n.8 (5th Cir. 2004) (citing *Brown v. Sibley*, 650 F.2d 760, 769 (5th Cir. 1981)) (emphasis omitted).

With this legal framework in mind, Devereux argues that Lewis has not alleged sufficient facts to demonstrate a claim under Section 504. There is no question that Lewis has sufficiently pled the first two elements of a Section 504 claim. The question posed by

Devereux's Motion to Dismiss is whether the third element has been satisfied. Devereux contends that "[Lewis] presents no facts that [Devereux] discriminated against D.R. solely on his alleged disabilities," and "pleads no facts on how [Devereux] failed to develop a treatment plan or failed to implement his treatment." Dkt. 23 at 7. In response, Lewis contends that the allegations outlined in the Amended Complaint fall under the protection of Section 504 because "D.R. meets the elements to support a plausible claim under Section 504 in that he is clearly a person with a disability, has been deprived public benefits solely because of his disability and that the facility receives federal monies." Dkt. 24 at 18 (citation omitted).

To assess the merits of Devereux's argument, the Court must carefully review and analyze the Amended Complaint. The Amended Complaint alleges that Devereux violated D.R.'s rights in the following manner:

    a.    by failing to accommodate his disabilities commensurate with his unique and individualized needs;
    b.    by refusing and failing to provide him necessary auxiliary services;
    c.    by failing to develop a treatment plan commensurate with his unique and individualized needs;
    d.    by failing to implement his treatment plan;
    e.    by using unnecessary use of force on a number of occasions;
    f.    by using excessive force on a number of occasions;
    g.    by using restraints without necessity;
    h.    by using restraints excessively;
    i.    by using to[o] much force during the restraints;
    j.    by verbally abusing D.R.[;]
    k.    by physically abusing D.R.;
    l.    by failing to hire staff for the unit to address his behavioral and emotional needs;
    m.    by failing to have staff trained on the unit to address his behavioral and emotional needs;

n. by failing to have professional staff correctly supervise staff on the unit for him;
o. by retaining staff who should have been removed from the unit where D.R. lived; [and]
p. by failing to provide him a non-hostile treatment environment[.]

Dkt. 22 at 14–15.

Devereux contends that allegations (a) through (d) fall flat because Lewis pleads no facts on how Devereux allegedly failed to accommodate her son's disabilities, failed to provide a treatment plan or failed to implement such treatment plan.[2] The Court readily acknowledges that this is a close call, but ultimately determines that Lewis has pled sufficient facts, which, at this stage must be accepted as true, to state a plausible claim of discrimination under Section 504 for failure to accommodate D.R.'s disabilities, failure to provide a treatment plan, and failure to implement such treatment plan. The Court reaches this conclusion because in addition to describing various alleged incidents of mistreatment against D.R., the Amended Complaint specifically alleges that Devereux "did not provide D.R. with benefits or services that were *Effective*. The facts as previously described demonstrate violations of the regulations promulgated pursuant to Section 504 of the Rehabilitation Act, 29 U.S.C. §794; *see* 34 C.F.R. §104.52(a)(4) in that [Devereux]'s failures and refusals *limited D.R.'s (full) participation* and benefit from the programs offered by [Devereux]." Dkt. 22 at 17 (emphasis in original). Furthermore, the Amended

---

[2] At oral argument, Lewis conceded that the Amended Complaint did not allege sufficient facts to permit a claim under (b) for refusing and failing to provide D.R. necessary auxiliary services. As such, the Court recommends that the failure to provide necessary auxiliary services claim under Section 504 be dismissed.

9

Complaint contains allegations in several places that Devereux's "intervention was not in accord with [D.R.'s] Individualized Treatment Plan ('ITP') or any behavioral management plan for D.R." Dkt. 22 at 7. Taken together, these allegations persuade the Court that dismissal is inappropriate at this juncture. The parties are, of course, welcome to take the issue up again at the motion for summary judgment stage.

Lewis's allegations (e) through (p) arise out of the alleged verbal and physical abuse inflicted on D.R. by Devereux's employees. Relying on a case from the Northern District of Texas, Devereux argues that Lewis's allegations of physical abuse, although jarring, do not state facts that would lead the Court to reasonably infer that Devereux subjected D.R. to discrimination because he was disabled. *See* Dkt. 23 at 6 (citing *Strange v. Mansfield Indep. Sch. Dist.*, No. 4:18-cv-00101-O, 2018 WL 3950219, at *3 (N.D. Tex. Aug. 17, 2018). The Court respectfully disagrees. While Devereux correctly observes that general allegations of physical abuse do not, automatically, give rise to an inference that an individual has been discriminated against because of a disability, this case presents much more than generalized allegations of physical abuse. The Amended Complaint contains allegations that D.R. was discriminated against specifically because of his disability. For example, the Amended Complaint states:

> 94. The acts and omissions of the Staff at Devereux were predicated upon the fact that D.R. was a person with a disability and could not defend himself against adults, and staff took advantage of his disabling conditions.
>
> 95. The acts and omissions of the Staff at Devereux were predicated upon the fact that D.R. was a person with a disability and had a difficult time communicating his needs, the staff taking advantage of his particular disabling condition.

> 96. The acts and omissions of the Staff at Devereux were predicated upon the fact that D.R. was a person with a disability and was seen to be lacking credibility in his communications with others, the staff taking advantage of his disabling condition as well.

Dkt. 22 at 16. The Court finds that these allegations, when read together with the claims of physical violence by Devereux staff, are sufficient to survive a 12(b)(6) motion to dismiss. *See Taylor v. Richmond State Supported Living Ctr.*, No. 4:11-3740, 2012 WL 6020372, *5 (S.D. Tex. Nov. 30, 2012) (refusing to dismiss Section 504 claims based on alleged physical abuse of a minor because the complaint sufficiently alleged mistreatment was "because of or due to his profound and unusual disabilities") (internal quotation marks omitted).

In requesting dismissal of the Section 504 claim, Devereux also argues that Lewis has failed to meet her burden to plead facts demonstrating that D.R. was discriminated against "solely by reason of his disability." Dkt. 23 at 4 (quoting *Melton*, 391 F.3d at 676 n.8) (emphasis in original). Although it is true that the Amended Complaint does not utilize the exact words "solely by reason of his disability," the language throughout the Amended Complaint certainly alleges that D.R. was discriminated against as a result of his disability. *See* Dkt. 22 at 16 ("The acts and omissions of the Staff at Devereux were predicated upon the fact that D.R. was a person with a disability . . . ."); *id.* at 17 ("The facts as previously described demonstrate violations of Section 504 of the Rehabilitation Act, 29 U.S.C. §794 by [Devereux] against [D.R.], because of his disability."). At this early pleading stage of the case, the Court finds that Lewis has stated a plausible claim of discrimination under Section 504. Discovery should be allowed to proceed and the Court can always revisit, on

summary judgment grounds, whether there is any evidence that D.R. was discriminated against solely as a result of his disability.

## CONCLUSION AND RECOMMENDATION

For the reasons stated above, the Court RECOMMENDS that Devereux's Motion to Dismiss be DENIED in part and GRANTED in part. The Court recommends that Lewis's Section 504 claim for refusing and failing to provide D.R. necessary and auxiliary services be dismissed. All other Section 504 claims should remain at this time.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED at Galveston, Texas, this 17th day of April, 2019.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE